THE STATE ex rel. A. J. SIEGEL et al. v. J. HUGO GRIMM, Judge of Circuit Court, City of St. Louis.

In Banc, May 21, 1926.

1. **CONDEMNATION: Compliance with Legislative Requirements.** In a proceeding to condemn private property to public use there must be a strict compliance with every legislative requirement. Everything is essential which the law has said should be done, but the law should not be so construed as to defeat the evident legislative purpose, nor should the court supply what the lawmakers have omitted.

2. ———: **Widening Street: Description of Property: Sufficient Petition.** Where the charter required that the petition for the condemnation of private property for public use should set forth "a des-

State ex rel. Siegel v. Grimm.

cription of the property and the estate or interest therein in each instance which the city seeks to appropriate or damage," a petition for the widening of a street by taking forty feet of all lots abutting on its south side, need not contain a description of the property of each owner and his estate or interest therein, but only a description of the property and the estate and interest therein which the city seeks to appropriate or damage; and a petition which states that "it is necessary to appropriate, condemn, take and damage for public use," pursuant to a quoted ordinance, which declared the south line of the parts of the lots to be appropriated to be forty feet south of the street as now laid out, "the private property, and every estate or interest therein, situate within the limits and embraced within the lines of such highway described, and as the several properties, or parts thereof, so to be appropriated or damaged, appear shown on the plat with this petition filed and made a part thereof," and that "the defendants named in the caption of this petition respectively are the owners of or claim an interest in the several properties shown on said plat, to which reference is made for further description of the proposed public improvement and of said properties to be so| appropriated," without stating the number of any lot or its width except as those things are accurately described in the plat, complies with the charter requirement, and contains a sufficient description, since the named owners know what property they own and are told by the petition, without reference to the plat, what portion of their lots the city seeks to appropriate and what portion will be damaged.

3. ————: ————: ————: **Petition: Reference to Accompanying Map.** A map may be filed with the petition, referred to and made a part of it, and used to render more complete and intelligible the description of the property to be taken or damaged in a condemnation proceeding. And the fact that the law does not require such map or plat to be recorded, does not render it unavailing as a means of more clearly describing and identifying the properties described in the petition.

4. ————: ————: ————: **Exhibit Attached to Petition: Maps of Property Taken.** An exhibit, attached to and made a part of a petition, cannot be used to supply the omission of a material allegation, or to cure a fatal defect in the pleading, but it may be thus used for the purpose of elucidating and rendering more intelligible allegations contained in the petition. Besides, a map or plat, which accurately and specifically, by colors, lines, numbers and proper legends, describes the property to be appropriated or damaged in a condemnation proceeding brought by the city to widen a street, and filed with and made a part of the petition, and which illuminates

and aids to make the general descriptions contained in the petition more complete and more easily understandable, is something more than a mere paper annexed and filed as an exhibit to a petition, but, in considering a demurrer to the petition, is to be considered a part of it.

Corpus Juris-Cyc. References: **Eminent Domain**, 20 C. J., Section 310, p. 881, n. 89; Section 364, p. 953, n. 79; p. 956, n. 89; Section 366, p. 958, n. 8. **Pleading**, 31 Cyc., p. 563, n. 10, 11.

## Prohibition.

PRELIMINARY RULE DISCHARGED.

*Leahy, Saunders & Walther, Bryan, Williams & Cave, Cornwell & Hicks* and *Henry S. Baker* for relator.

(1) Every material requirement of the statute authorizing condemnation proceeding must be strictly complied with. Williams v. Kirby, 169 Mo. 622; City of St. Louis v. Koch, 169 Mo. 587. Everything is essential which the law requires to be done. Leslie v. St. Louis, 47 Mo. 474; Union Depot Co. v. Federick, 117 Mo. 38; Shaffner v. City, 31 Mo. 264; City of St. Louis v. Gleason, 93 Mo. 33; People v. Trustees, 32 Hun. (N. Y.) 508; Hughes v. Sellers, 34 Ind. 337. (2) "A petition in proper form as required by statute is a jurisdictional prerequisite to the authority of the court to entertain proceedings thereunder." 2 Nichols on Eminent Domain (2 Ed.) secs. 398, 425, 402, p. 1065 et seq.; Lewis on Eminent Domain (3 Ed.) p. 977; Williams v. Kirby, 169 Mo. 622; In re Grove Street, 61 Cal. 438; City of St. Louis v. Gleason, 93 Mo. 33; City of St. Louis v. Glasgow, 254 Mo. 262; City of St. Louis v. Cruikshank, 16 Mo. App. 495; Kas. C. I. R. Co. v. Davis, 197 Mo. 669; In re Flatbush Avenue, 1 Barbour (N. Y.) 286. (3) Requirements of the statute as to descriptions of property sought to be taken are enforced with especial strictness. "Where land is to be taken for public purposes the description should be as definite as is necessary in a

deed.'' Nichols on Em. Domain, sec. 397, p. 1065; Williams v. Kirby, 169 Mo. 622; Nashville v. Hobbs, 120 Ala. 600; Hughes v. Sellers, 34 Ind. 337.; Anderson v. Pemberton, 89 Mo. 61; Omaha v. Richards, 38 Neb. 847; California Ry. Co. v. Hooper, 76 Cal. 404; Powers v. Irish, 23 Mich. 429; Railway v. Circuit Judge, 95 Mich. 318; Mathias v. Commissioner, 49 Mich. 465; Rice v. Danville R. R. Co., 7 Dana (Ky.) 81. (4) Where description of property sought to be condemned is required, the setting out of the description in the petition being essential to jurisdiction, the description cannot be amended. Grant v. Hyde, 67 Ohio St. 166. (5) The charter of city of St. Louis requires the filing within six months from taking effect of ordinance of petition ''setting forth the general nature of the public use for which the property is to be appropriated or damaged, a description of the property and the estate or interest therein in each instance which the city seeks to appropriate or damage.'' (6) Petition which does not contain a description of the property and the estate or interest therein in each instance which the city seeks to appropriate or damage, fails to state a cause of action. St. Louis v. Waterman, 277 Mo. 221.; St. Louis v. Breuer, 223 S. W. 108. (7) The plat filed with the petition as an exhibit cannot be considered as part of the petition in determining the sufficiency of the petition. Curry v. Loekey, 35 Mo. 389; Coal & Iron Co. v. Long, 231 Mo. 605. (a) The charter requires the matters in question to be set out in a petition, not on a plat. It is the filing of such a petition, not of a plat, which sets in motion the jurisdiction of the court. (b) Appropriation of property under the city charter is accomplished in a different mode than condemnation by a railroad corporation of a right of way. In the latter the first step is the filing of a plat. Hence the case of Fowler v. Railroad, 113 Mo. 456, is not authority in this case. Where filing of plat is required, omission to comply is fatal and is not cured by filing a petition. In re Rochester Railroad Co., 123 N. Y. 351, the converse is likewise true. Filing of a plat

cannot cure the failure to file a petition in the form prescribed by the statute.

*Oliver Senti, G. Wm. Senn* and *Theodore C. Eggers* for respondent.

(1) The general code and rules of practice and procedure are observed in actions for the exercise of the power of eminent domain, in the absence of special statutory or charter provisions governing the particular instance. Railroad Co. v. Taylor, 43 Mo. 35; Railroad Co. v. Kellogg, 54 Mo. 334; Cory v. Railroad, 100 Mo. 147; St. Louis Ry. Co. v. Fowler, 113 Mo. 458; Leonard v. Sparks, 117 Mo. 103; St. Louis v. Lang, 131 Mo. 412; Leavenworth Bridge Co. v. Atchison, 137 Mo. 218; St. L. K. & N. W. Ry. Co. v. Knapp-Stout Co., 160 Mo. 396; Cytron v. Transit Co., 205 Mo. 692; St. Louis v. Lawton, 189 Mo. 474; Bennett v. Marion, 106 Iowa, 628. The particular description of each property and of the several estates and interests therein, if such allegation thereof in the petition, by interpretation of the city charter, be required, is yet not jurisdictional in character. St. Louis v. Franks, 78 Mo. 41; Cory v. Railroad, 100 Mo. 282; Thompson v. Ry. Co., 110 Mo. 147; Union Depot Co. v. Frederick, 117 Mo. 138; Kansas City v. Smart, 128 Mo. 272. (2) Jurisdictional matters, even though provided by the Constitution itself, may be waived by the owner. United States v. Reed, 56 Mo. 585. And such objections are waived by contesting the merits. Evans v. Haefner, 29 Mo. 141; Leonard v. Sparks, 117 Mo. 103; Union Depot Co. v. Frederick, 117 Mo. 138; Railroad Co. v. Kemper, 256 Mo. 279; Railroad Co. v. Railroad Co., 17 W. Va. 812; Bennett v. Marion, 106 Iowa, 628; Drain. Dist. v. Dawson, 243 Ill. 175; Weeks-Thorne Co. v. Syracuse, 124 N. Y. Supp. 317.

*Anderson, Gilbert & Wolfort, amici curiae.*

(1) Relators would have the court construe the words "each instance which the city seeks to appro-

priate or damage" to mean each separate ownership in the description of the property condemned—and not that instance refers to the condemnation proceeding. In condemnation proceedings instituted under this section "each instance" has been construed to mean the instant condemnation—instance referring to the condemnation proceeding, not to separate parts of this proceeding. (2) It is a rule of law that the construction adopted by the parties will be adopted by the courts. This rule runs through ancient, medieval and modern jurisprudence. It is founded upon a characteristic of human nature that a human being is not going to adopt a construction contrary to his own interests unless that construction is the proper construction. Eisenstadt Mfg. Co. v. Bldg. Co., 233 S. W. 285; Hazeltine v. Ins. Co., 240 S. W. 815; Ismert-Hincke Co. v. Mfg. Co., 243 S. W. 408; Southern Ry. Co. v. Lbr. Co., 247 S. W. 219. In the case at bar all of the relators appeared before the commissioners, advised them in detail what property they owned, advised them in detail what they thought this improvement would benefit or damage their property. Having adopted this construction for the purpose of endeavoring to get as much money from the city as possible, they are in no position to come in and claim that another construction is correct, because they failed to convince the commissioners of the amount of their damage. (3) The description of a larger piece of property necessarily includes the description of the lesser. Except for unknown parties the petition alleges that defendants owned or claimed an interest in the property sought to be condemned. None of the relators filed a motion to make more definite, nor in any way attacked the pleading of the city, but proceeded to have their claims heard by the commssioners. Even after a motion to make definite is overruled, this objection is waived by proceeding further. A fortiori, it is waived if no motion to make definite is made.

ATWOOD, J.—This is an original proceeding in prohibition to stay further action of the Circuit Court in the City of St. Louis in the condemnation of property along the south line of Olive Street in the city of St. Louis extending from Twelfth Street westwardly to Channing Avenue, a distance of more than twenty blocks, relators contending that the petition in the condemnation proceeding fails to state a cause of action. Respondent consented to the granting of a preliminary rule, waived issuance of the writ, made full return and pleaded that the petition in the condemnation suit was entirely sufficient under the provisions of the St. Louis Charter to fix the jurisdiction and sustain a judgment. Relators thereupon filed motion for judgment on the pleadings.

The petition here attacked was filed by the city of St. Louis through its City Counselor in the circuit court, city of St. Louis, on November 9, 1920. It contains an allegation that it is filed pursuant to the provisions of Ordinance No. 30751, passed by the Board of Aldermen upon the recommendation of the Board of Public Service for the widening of Olive Street, and directing the City Counselor to institute proceedings to condemn the property needed for such improvement, said ordinance having become effective May 10, 1920, and that the lines of Olive Street from Twelfth Street to Channing Avenue as the same is to be established, opened and widened are to be as follows, to-wit:

"The north line, from Twelfth Street to Lindell Avenue, to be coincident with the north line of Olive Street as heretofore laid out; the south line, from Twelfth Street to the west line of lot forty-nine, as heretofore laid out in city block number nineteen hundred fifty, said lot being about two hundred ninety-seven feet westwardly from the west line of Compton Avenue, to be distant forty feet southwardly from and parallel to the south line of Olive street as heretofore laid out, said distance being measured perpendicular to the said south line of Olive Street as now laid out; from the aforesaid

west line of lot forty-nine in said city block number nineteen hundred fifty, the said south line of Olive Street shall run in a straight linear direction to a point distant one hundred feet southwardly from the southwest corner of city block number ten hundred forty-two as now laid out, said distance being measured perpendicular to the south line of said city block, and said southwest corner of said city block being distant about two hundred fifty feet one and seven-eights inches westwardly from the west line of Leonard Avenue; from the aforesaid point opposite the southwest corner of said city block number ten hundred forty-two to Channing Avenue the south line of Olive Street shall be the western prolongation of the last-described south line of Olive Street as herein proposed to be established.''

The petition among other things further states:

''That for the purpose of establishing, opening and widening said Olive Street, as provided by said Ordinance No. 30751, it is necessary to appropriate, condemn, take and damage for public use, pursuant to the provisions of said ordinance, the private property, and every estate or interest therein, situate within the limits and embraced within the lines of such highway described; and as the several properties, or parts thereof, so to be appropriated or damaged appear shown on the plat marked 'Exhibit A,' with this petition filed and made a part thereof.

''That the defendants named in the caption of this petition respectively are the owners of or claim an interest in the several properties shown on said 'Exhibit A,' to which exhibit reference is made for further descriptions of the proposed public improvement and of said properties to be so appropriated or damaged.''

The petition also sets out the interests, as far as known to plaintiff, of persons unknown to plaintiff, who plaintiff believes are interested in or who claim to be interested in certain tracts of land which are described in said petition.

The plat filed with said petition, made a part thereof and therein designated as "Exhibit A," is drawn to an indicated scale and shows and identifies the following in lines, colors, letters, words and figures, and by appropriate reference to city streets and plats: Olive Street with its varying width as previously laid out from Twelfth Street to Channing Avenue, the strip proposed to be taken along the entire south side of Olive Street in widening said street to a total uniform width of one hundred feet from Twelfth Street to Channing Avenue, each tract of land included or intersected by the strip proposed to be taken with the dimensions thereof and the dimensions of the parts to be taken and of the parts remaining, the names of the owners of the several tracts, and the names of the streets intersecting said Olive Street.

On this petition process was issued and service had. Commissioners were appointed to ascertain the damages and assess the benefits growing out of the proposed widening of Olive Street, who thereupon duly qualified and entered upon the discharge of their duties. Pursuant to notice of the time and place of meeting of said commissioners, relators along with other defendants appeared in person or by attorney or agent before said commissioners and offered testimony and submitted proof for the consideration of said commissioners in the determination of their claims and demands with respect to values, damages and benefits affecting their respective properties. Having heard relators and other persons who presented themselves, said commissioners prepared and filed in said circuit court their unanimous report in writing, duly sworn to, setting forth their findings in the premises, of values, damages and benefits, for and affecting the separate lots and private properties, including, among others, the particular findings with respect to the several properties of these relators, who thereupon filed exceptions. The insufficiency of the petition filed by the city of St. Louis to state a cause of action, and the want of jurisdiction in the circuit court

over the subject-matter of the suit, because of the failure of the city of St. Louis to file, through its City Counselor within six months after the taking effect of said Ordinance No. 30751, a petition in the form and setting forth the matters specified in the charter of said city of St. Louis, are stated as specific grounds of exception. The city of St. Louis filed a motion to strike from the exceptions of relators, the said two grounds of exception, on the grounds, first, that they are insufficient in law as ground for exception; and, second, that they are matters of defense and should have been raised by proper motion or answer to plaintiff's petition and not having been so raised were waived and cannot be raised now as an exception to the report of the commissioners. On this motion respondent ruled that the petition stated a cause of action. Hence, this application for writ of prohibition. The city of St. Louis has paid into the hands of the clerk of said circuit court, out of the funds of said city raised by bond issue, a sum in excess of $1,900,000, being the amount of damages, less assessment of benefits, determined by said commissioners and set forth in their said report.

I.    One of the charter provisions invoked by relators is that "the City Counselor, in the name of the city, shall apply promptly, and in no event later than six months after such ordinance is effective, to the Circuit Court of the Eighth Judicial Circuit or to any judge thereof in vacation, by petition setting forth," etc.   The period within which the petition herein contemplated could be filed has long since expired.   Consequently, this case turns upon the sufficiency of the petition which was filed in the condemnation suit within time to state a cause of action under the charter. Relators say that it is insufficient.

Description.

In proceedings for the condemnation of private property for public use every legislative requirement must be strictly complied with.   As said in Leslie v. St. Louis, 47 Mo. 474, with reference to the exercise of the

power to take private property for public use: "Everything is essential which the law has said should be done before this high prerogative right can be carried out and enforced." So, in testing the sufficiency of a petition in suit for condemnation of private property we must first know what the law has said should be done, and for this we look to the city charter. In Hughes v. Sellers, 34 Ind. 337, it is well said: "We know of no other standard by which to measure the sufficiency of the petition than that which is to be found in the statute providing what it shall contain." The legislative provision against which, according to relators, the petition offends is Section 1, Article XXI, of the Charter of the City of St. Louis, as follows:

"Condemnation of or damage to private property, real or personal, or any easement or use therein for public use shall be effected as herein provided and as may be further provided by ordinance not inconsistent with this Charter. Upon the Board of Aldermen providing by ordinance, recommended by the Board of Public Service, (1) for the appropriation of any private property or any easement or use therein for any public use, or (2) for any public improvement or work which will damage private property, the City Counselor, in the name of the city, shall apply promptly, and in no event later than six months after such ordinance is effective, to the Circuit Court of the Eighth Judicial Circuit, or to any judge thereof in vacation, by petition setting forth the general nature of the public use for which the property is to be appropriated or damaged, a description of the property and the estate or interest therein in each instance which the city seeks to appropriate or damage, and praying the appointment of three disinterested commissioners to assess damages and benefits as hereinafter provided, to which petition the owners shall be made defendants by name, if known, and if unknown, by describing their claims and interests in such property and how derived by them."

The substance of relators' grounds of exception as set out in their brief is that the city's petition in the condemnation suit "contains no description of the property and the estate or interests therein in each instance which the city seeks to appropriate or damage, and, therefore, . . . the petition does not state a cause of action under the said Section 1 of Article XXI of the Charter of the City of St. Louis."

At this juncture it is well to observe that while eminent domain statutes are to be strictly construed so far as the power to condemn is concerned, yet they are not to be construed so as to defeat the evident purpose of the Legislature. Nor can we read into the statute what the lawmakers in their wisdom have seen fit to leave out. These charter provisions will be satisfied if the requisite averments are found. Words need not be multiplied if the substance appear.

As to the property and the estate or interest to be described, the above legislative provision, except in case of unknown owners, only requires that the petition set forth "a description of the property and the estate or interest therein in each instance which the city seeks to appropriate or damage." If a description of the property of each property owner and of his estate or interest therein had been required the charter would doubtless have so stated. The property owner may be presumed to know his own property and the particular estate or interest he has therein, but until advised by the petition he does not know how much of his property or the estate or interest therein which the city seeks to appropriate or damage. Therefore, we may reasonably conclude that the description of the property and the estate or interest therein here contemplated is that which the city seeks to appropriate or damage, and not the whole property of the landowner or his particular estate or interest therein. Description is defined in Webster's New International Dictionary as "a portraiture or representation in language." Touching the requirement as to a description of the property, the part of the petition first

above quoted definitely located the lines of Olive Street as the same was proposed to be widened and thereby undoubtedly gave a clear and definite representation in language of the property which the city of St. Louis sought to appropriate in the widening of Olive Street. Each property owner knew his own property, and from the petition he could readily determine the exact portion of his property sought to be appropriated. If any part of his property was damaged by reason of the taking of any other part an accurate description of the property so damaged appeared in the part remaining after deducting the part actually appropriated. *Certum est quod certum redii potest* is a maxim of logic as well as of law, and it is here apropos. By the description set out in the petition, therefore, without reference to the plat filed with the petition, made a part thereof and designated as "Exhibit A," in each instance, the owner of property thus sought to be appropriated or damaged was fully and accurately advised as to the exact portion of his property which the city sought to appropriate or damage. As to the requirement that the petition shall set forth a description of "the estate or interest therein in each instance which the city seeks to appropriate or damage," the petition alleges that "it is necessary to appropriate, condemn, take and damage for public use, pursuant to the provisions of said ordinance, the private property, and every estate or interest therein, situate within the limits and embraced within the lines of such highway described." Here also, "in each instance," the property owner was fully advised as to the estate or interest in the property which the city sought to appropriate or damage. He was warned and admonished that the city sought "every estate or interest" in the property. He was thereby fully advised and in no wise misled. We do not think that a petition which thus plainly portrays to the property owner the very things which the charter says it shall set forth fails to state a cause of action.

Relators say we have ruled otherwise on a similar petition in St. Louis v. Waterman, 277 Mo. 221. The pleadings are easily distinguished. The Waterman case was a condemnation proceeding brought by the city of St. Louis for the purpose of opening a street. Thirty or forty individuals, corporations and trustees were named as parties defandant. The petition, unaccompanied by a plat or drawing of any kind, by way of description set forth Section 2 of the ordinance establishing and opening the street as follows:

"Section Two. A street to be known as Kingsbury Boulevard, extending from Clark Avenue to De Baliviere Avenue, as hereby established as a public highway one hundred feet wide, the centre line thereof to run fifty feet north of and parallel to the north line of property now or formerly owned by Sarah E. Simmons, Emma P. Simmons and Susan M. Simmons, and the north line of property now or formerly owned by Stewart Shallcross Real Estate Company, in City Block numbered thirty-eight hundred and seventy-five, west. The said centre line being distant about four hundred and ninety feet north of the north line of Waterman Avenue, measured along the east line of De Baliviere Avenue."

It will be observed that this petition sought to lay out a new street (not to widen a street already located, established and long in use), and attempted to describe its center line merely by reference to property "now or formerly owned" by certain individuals located in a specified city block. An attempt was made to supplement this description by fixing one end of the center line of the proposed street at a point "about four hundred and ninety feet north of the north line of Waterman Avenue." No other point in the entire course of the center line of the proposed street was definitely fixed. Of course, such an attempt to describe the proposed street did not inform any owner as to what portion of his property the city sought to appropriate or damage. Furthermore, the petition did not in any manner set out the estate or interest therein which the city sought to

appropriate or damage. From the petition the property owner could gather no information as to whether his entire estate and interest or a mere easement therein was sought to be appropriated. These charter requirements, which so clearly appear in the petition now submitted to us, were not to be found in the petition filed in the Waterman case, and although unnecessary to a determination of the sole issue there submitted, that of jurisdiction of the particular action, it was correctly said that there being no property described the petition failed to state a cause of action. It would be manifestly incorrect for us to announce the same ruling here on a petition which does set out a description of the property and the estate or interest therein which the city seeks to appropriate or damage. But, even in the Waterman case we held that the circuit court on the petition filed had jurisdiction of the action (l. c. 227): "The petition in this case sets out the ordinance providing for the condemnaton and a description of the street which it is desired to open. That is, the distance, direction and width of the street. The court had jurisdiction of this class of cases and a description of the particular street desired to be opened gave it jurisdiction of this particular action." Upon the filing of the petition in the instant case the circuit court undoubtedly acquired jurisdiction.

Relators also indicate their reliance upon the case of City of St. Louis v. Breuer, 223 S. W. 108, but we are unable to find therein any support for their views. The only part of the decision touching a description of the property as it might affect the sufficiency of the petition is the last paragraph which reads as follows: "It is suggested that one reason for the dismissal of the proceeding by the trial court was the alleged failure of the petition to describe the property sought to be taken or damaged. Counsel for appellant urged this court to determine what manner of description required by Article 21 of the charter is necessary in this kind of a proceeding. The construction of Article 21 in that respect is unnecessary to a determination of this case and would be

*obiter,* because a failure properly to describe the property, in such case, would not warrant a dismissal for want of jurisdiction of the subject-matter. [City of St. Louis v. Waterman, 277 Mo. 221, 209 S. W. 905.]'' We have just indicated our views as to the manner of description required by Article 21 of the charter, and these views are not inconsistent with our holdings in the Waterman and Breuer cases, supra. We have also carefully examined every other authority cited by relators, including the cases reported in other jurisdictions, and find them even less in point than our own two decisions hereinabove distinguished.

II. Relators insist that the above-mentioned plat which was filed with the petition, made a part thereof, and therein designated as ''Exhibit A,'' is not to be considered in passing on their exceptions. In Nichols on Eminent Domain (2 Ed.) page 1069, the general rule in such case is thus stated: ''It is no objection that the description is incomplete or unintelligible without consultation with a map or plan, if the map is referred to in the description and is filed with it, and taken together the map and the description make clear what is intended to be included in the taking.'' Among the cases there cited in support of this doctrine is Railway Co. v. Fowler, 113 Mo. 458. This was a condemnation suit and defendants therein were even more diligent than these relators in that when served with summons they appeared and objected to the appointment of commissioners on the ground, among others stated, that the petition did not describe the property to be taken. Their objections being overruled they excepted, and when the commissioners made report they filed exceptions thereto, as in the instant case. In disposing of their objection that the petition failed to describe the land sought to be appropriated, Black, J., speaking for this court, said: ''According to the statute the petition should be set forth 'a description of the real estate or other property which the company seeks

to acquire.' There is no doubt but the petition may, as does this one, refer to a plat filed therewith for an accurate description of the property sought to be taken, and, if well described on the plat, that is sufficient. The plat in this case appears to have been prepared with care, and since it specifies the scale on which it is made, it cannot be difficult for a surveyor to locate the strip with certainty; and, that being so, the description is sufficient.''

Another leading Missouri case consistent with the rule is Cory v. Ry. Co., 100 Mo. 282, opinion written by Judge SHERWOOD. The claim was made that the proceeding instituted for the condemnation of a portion of plaintiff's ground was a nullity, it being insisted that the petition did not contain "a description of the real estate which the company seeks to acquire." In that case we held that the petition conformed to the provisions of law, although "for a more particular description of the location and course of the road, it refers to a map filed therewith and marked 'Exhibit A' and made a part of the petition.''

''But, relators say, these are railroad condemnation suits, and a railroad was required by statute to file a profile map or maps in the office of the county clerk of each county through which its road ran showing the actual survey, location and distance of its road-bed through the congressional sections, and the location and number of miles of its main and side tracks, which map or maps were required to be certified by the president and engineer of the company or a majority of the directors. This statutory requirement had nothing whatever to do with the plat which was designated as an exhibit, filed with the petition, made a part thereof and held to be such. The plats were evidently not the same, and it does not appear that they were even similar. The fact that this requirement does not exist as to municipalities could in no way distinguish city condemnation cases from railroad condemnation cases in the matter of pleading raised by relators.

The same general doctrine is also stated in Lewis on Eminent Domain, pages 978 and 980: "The names and residences of owners, with a description of the prop· erty of each, may properly be given in schedules attached to the petition. . . . The petition may refer to a map or plat attached, or on the public records, or to stakes or monuments upon the ground, and the description will be sufficient if it can be made out by such references."

In support of their position relators further urge that under Curry v. Lackey, 35 Mo. 389; Coal & Iron Co. v. Long, 231 Mo. 605, and similar cases holding that ex· hibits are not to be considered as a part of the petition in passing upon a general demurrer to the petition, this plat should be excluded from our consideration. The general doctrine is thus stated in 8 Ency. Pl. & Prac. 740: "In the absence of a statute the annexing and filing of papers as exhibits to a pleading does not make them a part thereof, and they cannot be referred to for the purpose of supplying the omission of a material allegation or curing a fatal defect, though for other purposes, as to obviate the former necessity of pleading such instruments in a certain way, it has been held that they may be looked to." A foot-note thereto reads: "Thus it is said that an exhibit may be said to be made in aid of or in elucidation of the allegations of a pleading, but not to supply entirely the omission of allegations necessary to present a good cause of action."

The rule is sound and its value may be readily conceded. In this day of loose pleadings and disregard of principles essential to a clear submission of issues, it serves a most useful purpose in curtailing the indulgence of "mere exhibits" attached to a petition or bill, perchance for the very purpose of aiding or beclouding the issues, as exigency may require. Yet, even if this doctrine could be applied in all its strictness to the case now before us it would not preclude a consideration of the plat, because, not only does the body of the petition, as

we have heretofore indicated, contain a good descripton under the terms of the charter of the property and the estate or interest therein each instance which the city sought to appropriate or damage, but it pleads as an averment of fact what is shown by the plat itself. The ultimate facts required to be set out in the petition being sufficiently pleaded, a general demurrer would not lie, and the plat, on the doctrine stated, would be taken for what it purports to be, namely, a part of the petition.

However, his plat is something more than a paper merely annexed and filed as an exhibit to the pleading. It also, describes the property sought to be appropriated or damaged, and in a manner peculiarly effective and helpful in the condemnation of real estate, and it purports to be a part of the pleading. The above doctrine would seem to have no proper application in a case of this kind. The petition on its face discloses that the plat therein referred to is not a "mere exhibit" such as is contemplated in our decisions holding that exhibits are not to be considered as any part of a petition upon general demurrer to the petition. The plat is clearly a graphic representation of the location and ownership of the property sought to be taken, based on the essential averments set out in the petition. Drawn to scale, showing in colors the property proposed to be taken, the property left, setting forth each tract included within or traversed by the lines of the street as widened with the name of the owner thereof, and the names of the streets, it is best calculated to catch the eye and most quickly and accurately inform the person who examines the petition as to the true location, character and extent of the property sought to be appropriated or damaged. It is neither a matter of evidence, nor cumbersome surplusage, nor is it an outside document or authority brought in to bolster up the petition. On the contrary it is a vivid representation commonly used in cases of this kind to illuminate the matter set out in the petition, and when the pleader has definitely identified it and specifically stated that it is a part of the petition we conceive of no

good reason why it should not be considered as a part of the petition. The mere fact that the plat was referred to as an exhibit did not change its nature as a designated part of the pleading, or bring it within the operation of a rule not designed to include it. Certainly the pleader might in proper narrative have included plats thus intimately connected with and illuminative of the subject-matter as consecutively numbered pages in the body of the petition. Such, in form, might have been better pleading, but looking to the substance, we see no essential difference between what might have been done and what was done in this instance.

A case arising in another jurisdiction but clearly in point is State; Duke v. Central New Jersey Telephone Co., decided by the Supreme Court of New Jersey, and reported in full in 11 L. R. A. 664. General Statutes of New Jersey, 1709-1895, p. 3460, provide that in condemnation proceedings of any telegraph or telephone company along public roads or highways such company shall "present its petition to the circuit court of the county in which said road or highways are situate, or to the judge thereof in vacation, setting forth the privilege or right of way desired or sought to be acquired," etc. The statute made no provision for the filing of a map or plat with the petition. In a telephone condemnation proceeding the sufficiency of a petition was challenged which described the part of the road, running over the land of the prosecutor, upon which the poles were to be placed, set out the size of the poles, the maximum distance from the ground to the point where wires were to be attached to the poles, and stated that a map or diagram was presented with the petition. The opinion thus disposed of the attack: "It is again objected that the petition and order do not describe the line of telephone poles and wires, nor the premises to be occupied thereby, nor sufficiently describe the rights to be acquired by said company. There was a map filed with the petition, and referred to in the petition as a map, which the petitioner prays may be considered as forming a part of the pe-

tition.   The petition states that the map correctly exhibits the road adjoining the lands of prosecutors and location of the poles.   That the location of each pole is indicated in a small circle of black ink, which circle is numbered in red ink from 1 to 27, which is the total number of poles to be erected. That the distances between said poles are indicated by figures in black ink between the circles.   The distance of the poles from the fence on the southerly side of the highway is indicated by figures in black ink beside each circle.   The distance of the poles from the fence on the northerly side of the highway is indicated by figures in or about the center of the highway.   The description contained in the petition, as already set forth, in connection with the map so filed, admittedly contains a very definite description of the burden to be imposed upon the land.   The objection urged is that the map was not physically attached to the petition. It would have been well to have so attached it; but it accompanied the petition, was marked with a letter mentioned in the petition as distinguishing it, and it could not have been overlooked or mistaken for anything other than a part of the petition.   I think the description thus given conformed to all legal requirements.''

III.   We hold that the circuit court had jurisdiction in the condemnation proceeding, and that the petition filed therein stated a cause of action under the city charter.   It follows that our preliminary rule herein should be dissolved and permanent writ denied.   It is so ordered.   All concur.